UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW B.,[1] | ) |
|           Plaintiff, | ) |
| v. | ) |
| MARTIN O'MALLEY,[2] Commissioner of Social Security Administration, | )  No. 1:22-cv-02149-TWP-MG |
|           Defendant. | ) |

**REPORT AND RECOMMENDATION**

In January 2017, Plaintiff Andrew B. applied for social security disability benefits (from the Social Security Administration ("SSA"), alleging a disability onset date of August 1, 2013 [Filing No. 5-5 at 2-6.]  His application was initially granted on May 1, 2017. Filing No. 5-3 at 10. On December 14, 2020, the State Agency determined Andrew B. was no longer disabled. [Filing No. 5-3 at 26.]

His application for reconsideration was denied on June 2, 2021. [Filing No. 5-4 at 13-14.] Andrew B. filed for a hearing in front of Administrative Law Judge William Shenkenberg (the "ALJ") on July 1, 2021.  [Filing No. 5-4 at 56.]   The ALJ issued a decision on March 21, 2022,

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

concluding that Andrew B. was not entitled to receive benefits because his disability ended on December 14, 2020. [Filing No. 5-2 at 24.] The Appeals Council denied review on October 6, 2022. [Filing No. 5-2 at 2-4.] On November 7, 2022 Andrew B. filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 18.] For the following reasons, the undersigned recommends that the Court **AFFIRM** the decision of the ALJ.

## I.
## STANDARD OF REVIEW[3]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, U.S., 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by

---

[3] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted.

reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

In determining whether a claimant continues to be disabled, the Commissioner employs an eight-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity and any applicable trial work period has been completed, she is no longer disabled. 20 C.F.R. § 404.1594(f)(1).

At step two, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, sub pt. P, App. 1; if so, her disability continues, and if not, the Commissioner proceeds to step three. 20 C.F.R. § 404.1594(f)(2).

At step three, the Commissioner determines whether medical improvement has occurred; if so, the analysis proceeds to step four, if not it proceeds to step five. 20 C.F.R. § 404.1594(f)(3).

At step four, the Commissioner determines if any medical improvement is related to the ability to work; if not, the disability continues, if so, the analysis proceeds to step five. 20 C.F.R. § 404.1594(f)(4).

At step five, the Commissioner determines if one of two groups of exceptions applies; if neither applies, the disability continues. If the first group applies, the analysis proceeds to step six, and if the second group applies, the claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(5).

At step six, the Commissioner determines whether all of the claimant's current impairments in combination are severe. If they are, the Commissioner proceeds to step seven; if they are not, the disability has ended. 20 C.F.R. § 404.1594(f)(6).

At step seven, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine if she can perform her past relevant work. 20 C.F.R. § 404.1594(f)(7). If he can perform any of her past relevant work, the disability has ended, but if she cannot perform any of her past relevant work, the analysis proceeds to the last step. *Id.*

At step eight, the Commissioner determines if there is other work that claimant can perform considering her age, education, past work experience, and RFC, with a limited burden shifting to the Commissioner to provide evidence that demonstrates that other work exists in significant numbers that claimant can still do given the relevant vocational factors. 20 C.F.R. § 404.1594(f)(8). If the Commissioner finds other work that claimant can do, he is no longer disabled. *Id.* If the Commissioner cannot find other work that claimant can do, he remains disabled and entitled to DIB. *Id.*

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

The most recent favorable decision finding that Andrew B. was disabled is the determination dated May 1, 2017. This decision will be referred to as the "comparison point decision" or "CPD." At the time of the CPD, Andrew B. was found to be disabled because of his schizophrenia and substance use disorder. [Filing No. 5-2 at 14.] The ALJ followed the eight-step sequential evaluation set forth in 20 C.F.R. § 404.1594 and concluded that Andrew B. was no longer disabled. [Filing No. 5-2 at 24.] Specifically, the ALJ found as follows:

- At Step One, Andrew B. had not engaged in substantial gainful activity[4] during CPD period. [Filing No. 5-2 at 14.]

- At Step Two, Andrew B. had the following medically determinable impairments at the time of the CPD: schizophrenia and substance abuse disorder. [Filing No. 5-2 at 14.]

- At Step Three, since the CPD, Andrew B. has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

- After Step Three, medical improvement occurred on December 14, 2020. [Filing No. 5-2 at 16.]

- At Step Four, the medical improvement was related to the ability to work because, by December 14, 2020, the claimant's CPD impairment(s) no longer met or medically equaled the same listing(s) that was met at the time of the CPD. [Filing No. 5-2 at 17.]

- At Step Five, since December 14, 2020, the claimant has continued to have a severe impairment or combination of impairments. [Filing No. 5-2 at 17.]

- At Step Six, based on the impairments present since December 14, 2020, the claimant has had the residual functional capacity to perform work at all exertional levels except the claimant is able to understand, remember and carry out simple instructions, and perform simple routine tasks, in a position with only occasional changes. The claimant is able to maintain concentration, persistence, and pace for simple tasks in two-hour increments. The claimant can have occasional interaction with the public, coworkers, and supervisors. [Filing No. 5-2 at 18.]

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- At Step Seven, the claimant has been capable of performing past relevant work as an inspector-hand packager, warehouse laborer, and pipeline laborer as actually generally performed. This work has not required the performance of work-related activities precluded by the claimant's residual functional capacity based on the impairments present since December 14, 2020. [Filing No. 5-2 at 22.]

- At Step Eight, in the alternative, since December 14, 2020, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present since December 14, 2020, the claimant has been able to perform a significant number of jobs in the national economy. [Filing No. 5-2 at 23.]

## III.
### DISCUSSION

Andrew B. argues that the ALJ erred because of a lack of substantial evidence supporting: (1) the decision that Andrew B. has had medical improvement and can now sustain competitive; (2) the ALJ's RFC; (3) the ALJ's analysis of Andrew B.'s daily activities; and (4) the ALJ's analysis of Andrew B.'s work activity and opinion evidence. The undersigned will consider each argument in turn.

### A.   Andrew B.s Medical Improvement

Andrew B. argues that the ALJ's decision—that he has experienced medical improvement and can now sustain competitive work—was not supported by substantial evidence. [Filing No. 7 at 11.] Andrew B. argues that the ALJ failed to realize that the improvements he made were largely caused by the support and accommodations he received, which support and accommodations are not consistent with maintaining competitive work. [Filing No. 7 at 11.] Specifically, Andrew B. attends the Clubhouse three to four days a week, where he spends time with individuals also experiencing mental illness and learned life and computer skills. [Filing No. 7 at 11.] Andrew B. argues that there is no logical bridge because Andrew B. cannot sustain competitive employment while receiving this life skills training three to four days a week. [Filing No. 7 at 11.] Andrew B. also sets forth various other arguments, including that despite his condition stabilizing, he

6

continues to be ineligible for competitive work because he has not made SGA[5] since the CPD date, has attempted but been let go from other jobs for pace issues, and that he requires substantial support from his parents and "treatment team" to function at his current level of improvement. [Filing No. 7 at 12.]

The Commissioner argues that Andrew B.'s exemplary participation in the mentoring program Indiana Mentor (his part-time job) is evidence of his high functioning. [Filing No. 11 at 15.][6] The Commissioner points out that in July 2021, Ms. Austin, the director of the Indiana Mentor, told the Agency that Andrew B. "is a pleasure to work with"; needed no special accommodations, and; had no problems relating to others, dealing with normal work stress, following directions, and maintaining attention and concentration. [Filing No. 11 at 9.] The Commissioner argues that the psychological exams of Dr. Ratliff (Andrew B.'s psychiatrist and treating physician) and testimony and narrative statement of Ms. Summer (Andrew B.'s case manager and life skills clinician) were consistent with the acceptable medical sources, which supported the ALJ's finding that Andrew B. was capable of simple, routine tasks. Finally, the Commissioner distinguishes Ms. Summer's opinion that Andrew B. needed support to care for his hygiene and medication—as a non-medical opinion unsupported by relevant evidence. [Filing No. 11 at 7.]

In Reply, Andrew B. argues that Dr. Ratliff's opinions reflect how well Andrew B. functions *with the support he receives from the Clubhouse* (emphasis added), and the ALJ failed to explain why Andrew B. could sustain competitive work without this support. [Filing No. 12 at

---

[5] SGA refers to "substantial gainful activity." *Dotson v. Shalala*, 1993 WL 287716 (7th Cir. 1993).
[6] Unhelpfully, the Commissioner does not clearly brief the issue of the support Andrew B. receives from the Clubhouse.

1.] He also argues that he continues to experience hallucinations and paranoia and that Ms. Summer's statements should be given greater or equal weight to Ms. Austin's statements, because Ms. Summer knew Plaintiff better and provided greater detail. He argues that "Ms. Austin's statement is a complete and accurate reflection of [Andrew B.'s] work." [Filing No. 12 at 3.]

The ALJ did not err in his finding that Plaintiff has experienced medical improvement and can now sustain competitive work. Andrew B. clouds the issues by relying heavily on his participation in the Clubhouse as evidence that he cannot hold down a job. Andrew B. argues he needs the support he receives to function, and he cannot receive this time intensive support while sustaining competitive work. [Filing No. 7 at 11.] Because he is in a Catch 22 that the ALJ did not account for, thus there is no logical bridge.

But the Court disagrees. The medical evidence consistently supports the ALJ's finding that Andrew B. has improved and can perform only simple, isolated, static tasks, and limited to understanding and executing simple instructions and tasks, and handle only occasional changes and occasional interaction with others. [Filing 5-2 at 18; Filing No. 11 at 6.] First, Andrew B. fails to confront the evidence that his amphetamine abuse disorder (one of his two disabilities at the CPD point) ceased beginning in December 2020. Andrew B.'s psychiatrist and treating physician, Dr. Ratliff, stated that Plaintiff's schizophrenia likely stemmed from his remote usage of methamphetamines—which he has now abstained from taking for several years. [Filing No. 5-2 at 17.] Second, Dr. Ratliff described Andrew B.'s schizophrenia as quite stable (while acknowledging his chronic thought disorder) and noted that he was functioning at a high level. [Filing No. 5-10 at 112-13, Filing No. 5-11 at 112-14.] He further noted positive mental function, decreased negative symptoms, and overall normal affect and orientation. The ALJ contrasted these improvements with Andrew B.'s impairments at the time of the CPD—where he was diagnosed with schizophrenia

8

and amphetamine type substance abuse disorder in early remission. At that time his hallucinations and paranoia led to hospitalizations and a variety of disordered thought patterns and behaviors. [Filing No. 5-2 at 16-17.]

The ALJ appropriately contrasted Andrew B.'s impairments and behaviors with the documented improvements. See *L.M.N. ex rel. Motley v. Astrue*, 2010 WL 1190326 (S.D. Ind. Mar. 23, 2010) (affirming finding of medical improvement where the ALJ did not inappropriately ignore, misstate, or reject record evidence); *Cook v. Commissioner of Social Security*, 2019 WL 1110412 (N.D. Ind. Mar. 8, 2019) (affirming the ALJ's decision where substantial evidence supported finding that medical opinion was related to claimant's ability to work). First, it is far from clear that Andrew B. cannot function without the support he receives at the Clubhouse. The Clubhouse teaches life skills and provides some support and community—participation and success in this environment is not akin to a declaration that attendees can never function independent from the environment.

Second, the ALJ considered his attendance at the Clubhouse in determining Andrew B's RFC. ("The claimant attends a place referred to as the Clubhouse three to four days per week. It is a place where people with mental illness can gather and find community and where they are taught life skills and computer skills." [*See* Filing No. 5-2 at 19.] Andrew B. cites *Shamrak v. Apfel*, 226 F.3d 809 (7th Cir. 2000) for the proposition that the ALJ did not "build a logical bridge to the conclusion that Andrew B. was able to sustain competitive employment while also needing life skills training and support three to four days a week in order to work a part-time job." Not only did the Seventh Circuit affirm the District Court's affirmation of the ALJ's denial of benefits in *Shamrak*, but nowhere does it discuss the need for, or use of, a life-skills community.

9

Moreover, the ALJ did not ignore the statements from Ms. Summers regarding Andrew B.'s ability to perform part-time work. The ALJ accurately represented these statements then weighed them against consistent record evidence showing sustained improvement. [Filing No. 5-2 at 19-22.] Substantial record evidence supports the ALJ's finding of medical improvement, especially given that Andrew B. has stopped abusing methamphetamines, which abuse at the time of the CPD was not only an independent disability but was significantly worsening his schizophrenia.

Because the ALJ built a logical bridge from the record evidence to his conclusion of medical improvement, the undersigned RECOMMENDS that the District Judge **AFFIRM** on this issue.

### B. The RFC Analysis

Andrew B. next argues that that the RFC does not adequately address all of his moderate limitations. At Step 8, the ALJ found Andrew B. was moderately limited in his ability to interact with others; concentration, persistence, and pace; and managing himself. [Filing No. 5-2 at 15.] Specifically, Andrew B. argues that the RFC limitations do not account for his hallucinations and how they affect his CPP. [Filing No. 7 at 13.]

The Commissioner argues that the ALJ reasonably rejected more limited accounts of Plaintiff's functioning and tied the RFC findings to moderate ratings in broad domains of psychological functioning, which broad domains say nothing specific about a claimant's mental limitations under Seventh Circuit law. [Filing No. 11 at 20 (citing *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021).] The Commissioner also argues that Plaintiff's argument concerning the RFC is undeveloped and therefore waived.

In Reply, Andrew B. continues to make arguments regarding the ALJ's incorrect assessment of various medical opinions and statements but does not specifically address the RFC analysis.

The ALJ's RFC analysis was supported by substantial evidence. First, the undersigned agrees that Andrew B. has undeveloped his argument as to the RFC (and he failed to clearly respond to the Commissioner's response in his reply). However, analysis of the RFC shows that the ALJ undertook his analysis with exceptional thoroughness. The ALJ did not ignore Andrew B.'s allegations of hallucinations and paranoia, but considered them, [Filing No. 5-2 at 19], and found that:

> "[d]ue to the claimant's mental health disorders and substance use and moderate "paragraph B" limitations, the undersigned finds that the claimant can understand, remember and carry out simple instructions and perform simple routine tasks, in a position with only occasional changes. The claimant can maintain concentration, persistence and pace for simple tasks in two-hour increments. The claimant can have occasional interaction with the public, coworkers and supervisors."

[Filing No. 5-2 at 19.]

This RFC was appropriately supported by the record evidence and weighed against Andrew B,'s subjective symptoms (and the testimony of his mother), which the ALJ found not entirely consistent with the evidence. [Filing No. 5-2 at 20.] Specifically, Andrew B. maintains his symptoms (including hallucinations and paranoia) are disabling, but monthly mental status examination from December 2020 to November 2021 generally reflect "cooperative and pleasant behavior, euthymic mood, typically good insight and logical or linear and goal-directed thoughts." [Filing No. 5-2 at 20.] Moreover, psychiatrist examinations from September and December of 2020 and June and September 2021 reflect "intact orientation, appropriate thought content, normal speech, good grooming, cooperative behavior, good mood, bright affect, logical thought, intact associations, and at

11

least fair insight, judgment and concentration." [Filing No. 5-2 at 20; Ex. CDR-7F-143, CFR 10F-112, CDR-17F-12.]

The ALJ also considered the opinion of Dr. Ratliff (noting stable thought disorder and high-level functioning) and Ms. Austin's statement that Andrew B. received no accommodations at his part-time mentorship job. [Filing No. 5-2 at 21-22.] Andrew B. takes issue with this and says that Ms. Summer's testimony shows that he receives only "easy going clients" that do not have hard to manage behaviors." [Filing No. 5-2 at 57.] Andrew B. points out that Ms. Summer knew him far better than Ms. Austin and, despite not being directly employed by Indiana Mentor, was in a better position to speak to his experiences there. First, the Court is not convinced that Andrew B.'s ability to choose his own mentorship clients and pick mentees with an easy personality is akin to a formal accommodation. Second, even if it were, this is not harmful error. For reasons discussed both here and Part A., the record evidence sufficiently supports medical improvement such that the RFC is also supported.[7] Andrew B.'s preference for Ms. Summer's testimony (which the ALJ only gave little weight) does not meet the standard for clear error.

The ALJ gave only some weight to the State agency psychological consultants' statements. He found that, although their assessment reflected Andrew B.'s improved symptoms, the findings "fail to fully consider the allegations that the claimant still

---

[7] Andrew B. argues that the ALJ inappropriately gave weight to his ability to perform his part time job, because he worked less than 10 hours a week and sometimes just played video games with his client. But if this was error, it was harmless. The ALJ does not miscite the record evidence, which did show that the claimant had satisfactory job performance. The ALJ did not weigh Ms. Austin's statement as one of work capacity, instead appropriately weighing it as a statement of job performance. Andrew B. does not feel that his ability to perform his part time job, which he seems to characterize as hanging out with low-key clients (which it may well be), is equal to the ability to perform full time competitive work. But he fails to persuasively identify which disabilities *do* prevent him from working full time.

experiences some symptoms that interfere, albeit to a limited extent, with his cognitive and social functioning and ability to tend to his daily activities." [Filing No. 5-2 at 21.] Therefore, the RFC was more limiting than the statements provided by the State agency psychological consultants. The ALJ also appropriately gave little weight to those subjective statements from claimant's mother which conflicted with record evidence. [Filing No. 5-2 at 22.]

The ALJ's RFC was adequately supported by the assessments from the State Agency consultants, the claimant's treating psychiatrist, his employer, Ms. Austin, and the record evidence. The undersigned RECOMMENDS the District Judge **AFFIRM** as to the ALJ's RFC analysis.

### C.    The ALJ's Analysis of Andrew B.'s Daily Activities

Andrew B. next submits a brief argument that the ALJ erred on assessing Andrew B.'s daily activities and this was harmful error. Andrew B. repeats his argument that the Clubhouse support renders him unable to work competitively and notes his need for reminders for medication and hygiene. He also again argues that his part-time work is significantly limited as he never works more than 20-hours a week (and usually works less than ten hours) and is allowed to pick who he works with and avoid those clients who make him uncomfortable. [Filing No. 7 at 14-15.]

The Commissioner argues that the ALJ appropriately evaluated the record evidence, including the opinion of Dr. Ratliff and the state agency consultants, and that the ALJ's preference for Ms. Austin's opinion over Ms. Summer's was not harmful error. [Filing No. 11 at 8-12.]

The undersigned agrees. First, even if Andrew B. had *no* part-time job, it is highly plausible that the ALJ would have found that the record evidence and complete departure of one of his two disabilities (the methamphetamine disability, which was worsening his other disability,

13

schizophrenia) constituted significant medical improvement. The part-time job is supportive evidence that Andrew B. is functioning well, it is not the sole piece of evidence that points to improvement consistent with competitive work. Again, Andrew B. avoids reckoning with the improvement caused by his continued, long-term abstinence from methamphetamine abuse.

Again, the ALJ's treatment of Ms. Summer's opinion was not clear error; instead, the ALJ adequately weighed her opinion against the record evidence (which showed that Andrew B. did not receive an accommodation at work). Andrew B. has cherrypicked Ms. Summer's opinion and held it out as the "complete and accurate" depiction of his work activity. But that treatment is inappropriate. As reiterated throughout this opinion, the ALJ thoroughly evaluated the record evidence, and his discussion of Andrew B.'s daily activities was adequate. Moreover, despite briefly mentioning his subjective assessment of needing support to take his medication and bathe as conflicting evidence, Andrew B. does not provide a reason why this support would not continue as he lives with his parents who presumably would continue to provide these reminders.

Because the ALJ's analysis of Andrew B.'s daily activities was not clear error, the undersigned RECOMMENDS the District Judge **AFFIRM** the ALJ's analysis of Andrew B.'s daily activities.

    **D.**    **The ALJ's analysis of Andrew B.'s Work Activity and Opinion Evidence**

Finally, Andrew B. recycles his previous arguments regarding his ability to work part time and the ALJ's analysis of the opinions of Ms. Summer and Ms. Austin. Andrew B. argues that the ALJ should have given Ms. Summer's opinion (which stated that he received work accommodations and would "likely regress" without his Clubhouse support) preferential treatment over Ms. Austin's opinion, because Ms. Summer worked with Andrew B. consistently for several

years, whereas Andrew B. testified that he did not know Ms. Austin well, and she was not his direct supervisor. [Filing No. 7 at 16.]

However, the ALJ did not weigh Ms. Austin's statement as a statement of work capacity requiring analysis. [Filing No. 5-2 at 22.] Instead, he found it was an assessment from the "claimant's employer of the claimant's actual work performance." Presumably, Andrew B. wanted the ALJ to disregard or discredit the statement altogether. He did not do so, and he was not required to. Andrew B. is myopically focused on his part-time job, but the record overall does not support a finding of disability. Even Ms. Summer, whose opinion he prizes, said that Andrew B. could ignore his auditory hallucinations. [Filing No. 5-15 at 13.] The ALJ appropriately noted that the conflict between Ms. Austin and Ms. Summer's statements detracted from the accuracy of Ms. Summer's statements (reasonably, the ALJ presumed the employer's assessment of any job accommodations was accurate).

For the reasons stated here and throughout this Report and Recommendation, the undersigned finds no clear error based on the ALJ's discussion of Andrew B.'s work activity and the opinion evidence of Ms. Summer and Ms. Austin. The undersigned recommends the District Judge **AFFIRM** on this issue.

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned RECOMMENDS the Court **AFFIRM** the ALJ's decision denying Andrew B. benefits.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 2/21/2024

_Mario Garcia_
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**