UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANDREW B.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-02149-TWP-MG |
| | ) |
| MARTIN O'MALLEY, Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION**

Plaintiff Andrew B. requests judicial review of the final decision of the Commissioner of the Social Security Administrator ("the Commissioner"), denying his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Pursuant to 28 U.S.C § 636, the Court referred the matter to the Magistrate Judge (Filing No. 14), who submitted his corrected Report and Recommendation on February 21, 2024, recommending that the decision of the Commissioner be affirmed on all issues (Filing No. 18; *see* Filing No. 17). Andrew B. timely filed objections to the Report and Recommendation (Filing No. 19), to which the Commissioner replied (Filing No. 20). For the reasons set forth below, the Court **overrules** Andrew B.'s objections and **adopts** the Magistrate Judge's Report and Recommendation.

**I. BACKGROUND**

An extensive elaboration of the procedural and factual background of this matter is not necessary as the parties and the Magistrate Judge have sufficiently detailed the background of the

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

matter in the briefs and the Report and Recommendation. The Court mentions only those facts that are relevant to this decision.

Andrew B. was 22 years old as of the alleged onset date (Filing No. 5-3 at 2). He filed for DIB on January 11, 2017, alleging August 1, 2013, as the disability onset date for impairments of schizophrenia and amphetamine type substance abuse. *Id.* The severity of his medically determinable schizophrenia impairment met listing criteria 12.03 for Schizophrenia Spectrum and Other Psychotic Disorders. *Id.* at 8; *compare* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. His application was granted initially on May 1, 2017 (Filing No. 5-3 at 9-10).

On December 14, 2020, the State Agency determined that Andrew B.'s disability had ceased. *Id.* at 26. Following a hearing on June 2, 2021, a Disability Hearings Officer affirmed the finding (Filing No. 5-4 at 39, 47). Andrew B. timely requested a hearing by an Administrative Law Judge ("ALJ"). *See id.* at 60. On December 9, 2021, Andrew B. appeared with counsel and testified at the administrative hearing before ALJ William Shenkenberg (Filing No. 5-2 at 32-68). On March 21, 2022, the ALJ found Andrew B.'s disability ended on December 14, 2020, and that he had not become disabled again since that date. *Id.* at 24, 25. On October 6, 2022, the Social Security Administration's Appeals Council denied Andrew B.'s request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *Id.* at 2-5.

Andrew B. filed a Complaint on November 7, 2022, seeking judicial review of the decision to cease DIB pursuant to 42 U.S.C. § 405(g) (Filing No. 1). On October 5, 2023, this Court issued an order referring the matter to Magistrate Judge for a Report and Recommendation (Filing No. 14). The Magistrate Judge's first Report and Recommendation, filed on February 15, 2024 (Filing No. 15 (stricken)), contained a scrivener's error (*see* Filing No. 17), and was later replaced by a

corrected Report and Recommendation on February 21, 2024, recommending the decision of the Commissioner be affirmed on all issues (Filing No. 18). Thereafter, on February 27, 2024, Andrew B. filed his Objections to the Report and Recommendation, contesting certain comments by the Magistrate Judge and the ALJ's conclusion that he could sustain competitive work (Filing No. 19). On March 4, 2024, the Commissioner filed his Reply to Andrew B.'s Objections (Filing No. 20).

## II. **LEGAL STANDARD**

To determine whether a claimant continues to be disabled, the ALJ must follow an eight-step sequential evaluation process: (1) whether the claimant is engaged in "substantial gainful activity"; (2) whether the claimant has an impairment that meets or medically equals the requirements of a listing in the regulations; (3) whether the claimant's medical health improved; (4) whether the claimant's medical improvement will affect the claimant's ability to work; (5) if the claimant did not improve medically or the improvement does not affect the claimant's ability to work, whether there is an exception that disqualifies the claimant from being classified as disabled; (6) if the claimant has improved medically, could the claimant have "a severe impairment or combination of impairments"; (7) whether the claimant is "unable to perform his past relevant work"; and (8) if the claimant is unable to perform his or her past work, could there be "any other work existing in significant numbers in the national economy." *Catt v. Colvin*, No. 1:12-cv-876-TWP-DKL, 2013 WL 5309893, at *2 (S.D. Ind. Sept. 23, 2013); *see* 20 C.F.R. § 404.1594.

When the Court reviews the Commissioner's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The Court may not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate his or her analysis of the evidence in the decision, and while he or she "is not required to address every piece of evidence or testimony," *Dixon*, 270 F.3d at 1176, the ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (quoting *Dixon*, 270 F.3d at 1176). That is to say, the Court "must be able to trace the ALJ's path of reasoning" from the evidence to the conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000).

When a party raises specific objections to elements of a magistrate judge's report and recommendation, the district court reviews those elements *de novo*, determining for itself whether the Commissioner's decision as to those issues is supported by substantial evidence or was the result of an error of law. *See* Fed. R. Civ. Proc. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify the report and recommendation, and it need not accept any portion as binding; the court may, however, defer to those conclusions . . . to which timely objections have not been raised by a party." *Sweet v. Colvin*, No. 1:12-cv-549-SEB-TAB, 2013 WL 5487358, at *1 (S.D. Ind. Sept. 30, 2013) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–61 (7th Cir. 2009)); *see also Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chi.*, 543 Fed. Appx. 591, 594–95 (7th Cir. 2013).

### III. DISCUSSION

In his objections to the Magistrate Judge's Report and Recommendation, Andrew B. asserts slight variations of the arguments he already put forward in his Memorandum in Support of Complaint (Filing No. 7). However, Andrew B. once again ignores medical evidence and opinions that contradict his position and fails to point to evidence demonstrating the ALJ's conclusions were not supported by substantial evidence.

Andrew B.'s objections amount to a broad assertion that the ALJ incorrectly concluded he experienced medical improvement and could sustain competitive work. He asserts that (1) the ALJ over-inferred from the fact that he worked part-time and was stable in light of the support that he requires; and (2) the ALJ unreasonably relied, in part, on Andrew B.'s work in the mentoring program because it was purportedly accommodated. The Court finds no reversible error on the basis of Andrew B.'s objections.

**A.  Objections Concerning the ALJ's Determinations about Andrew B.'s Impairments and Medical Improvement**

First, Andrew B. argues that the need for the community (the Clubhouse), clinical (Ms. Summers), and parental support he receives "is not consistent with competitive employment" (Filing No. 19 at 2), and it remains unclear whether the ALJ considered such support in determining that the "evidence fails to establish the presence of the 'paragraph C' criteria" (Filing No. 5-2 at 16).

As the Report and Recommendation finds, the ALJ appropriately contrasted Andrew B.'s impairments and behaviors with the documented improvements. To satisfy "paragraph C criteria," a mental disorder must be "serious and persistent"; that is, there must be "medically documented history of the existence of the disorder over a period of at least 2 years" and evidence that the person (1) "rel[ies], on an ongoing basis, upon medical treatment, mental health therapy,

5

psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs" of the mental disorder, and (2) has "achieved only marginal adjustment" despite "diminished symptoms and signs."  20 C.F.R. § Pt. 404, Subpt. P, App. 1.  "Marginal adjustment" means that the person's "adaptation to the requirements of daily life is fragile; that is, [they] have minimal capacity to adapt to changes in [their] environment or to demands that are not already part of [their] daily life." *Id.*

As part of a careful step 2 analysis, the ALJ found that the evidence failed to establish the presence of the paragraph C criteria; specifically, that the record did not establish that Andrew B. "has only marginal adjustment" (Filing No. 5-2 at 16).  He continued: Andrew B. "has worked part-time for a couple of years, his mental health disorders are stable, and he functions at a high level." *Id.* (citing Filing No. 5-10, Filing No. 5-11, Filing No. 5-14).

The Commissioner argues that, despite Andrew B.'s insistence to the contrary, the ALJ "considered his attendance at the Clubhouse" in determining his residual functional capacity ("RFC")  (Filing No. 20 at 1–2) (citing Filing No. 5-2 at 19).  The Commissioner's position is well taken.  It is clear from the section assessing Andrew B.'s RFC, the part of the ALJ's opinion to which the Commissioner points, that the ALJ specifically considered that he "attends a place referred to the Clubhouse three to four days per week," "where people with mental illness can gather and find community and where they are taught life skills and computer skills."  (Filing No. 5-2 at 19.)  The ALJ further noted Andrew B.'s need for, and provision of, clinical and parental support. *See, e.g., id.* ("[Ms. Summers] testified that he requires the assistance of his parents and his case managers to tend to his basic daily activities.").

The Court appreciates Andrew B.'s point that uncertainty lingers in the decision as to whether the ALJ purposefully considered his support in the specific, discrete context of

6

determining "paragraph C criteria."  At the same time, absent other indications or evidence of the same, merely pointing this fact out — *i.e.*, that the ALJ forewent explicitly detailing Andrew B.'s support in the "meets or medically equals" section — does not convince the Court that the ALJ otherwise failed to appropriately consider his support needs as relevant evidence.  *Cf. Social Security Ruling 17-2p; Titles II and XVI: Evidence Needed by Adjudicators to Make Findings about Medical Equivalence*, 82 Fed. Reg. 15263, 15265 (Mar. 27, 2017) ("An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence . . . .").

The Court is "able to trace" on this point the ALJ's path of reasoning from the evidence to the conclusion he reached.  *Clifford*, 227 F.3d at 874.  In concluding Andrew B.'s progress exceeded "marginal adjustment", the ALJ drew upon medical records spanning from September 2020 to September 2021, wherein claimant's psychiatrist noted he was "[s]till quite stable despite having a chronic thought disorder", "[f]unctioning at quite a high level", compliant with medications, and "[n]ow actively engaged in employment" (Filing No. 5-10 at 145; *accord* Filing No. 5-11 at 114, Filing No. 5-14 at 857).  Andrew B. provides no new evidence demonstrating that the ALJ was obligated to reject this evidence.  At the hearing, the ALJ considered Andrew B.'s testimony concerning his employment, the Clubhouse, assisting family members, and recreational activities, and he asked follow-up questions (Filing No. 5-2 at 43–52).  Following a review of this and other evidence in the record, as well as the evidence cited by the ALJ, the Court cannot say that Andrew B. exhibits a "minimal capacity" to adapt to changes in his environment or to demands not part of his daily life that would require the ALJ's conclusion to be overturned.

To the extent that Andrew B. currently asserts that the support afforded by the Clubhouse, Ms. Summers, or his parents amounts to "medical treatment, mental health therapy, psychosocial support[], or a highly structured setting[]" that "diminish[es] the symptoms and signs" of his schizophrenia, 20 C.F.R. § Pt. 404, Subpt. P, App. 1, he must satisfy *both* sub-criteria under the Listing for his mental disorder to be "serious and persistent." That is, he must demonstrate not only reliance on his medical or psychosocial supports, *but also* achievement of only "marginal adjustment." *See id.* Moreover, because Andrew B.'s specific medical findings failed to satisfy either the paragraph B criteria or the paragraph C criteria for schizophrenia, the ALJ's conclusion — that no medical equivalence existed with an appropriate disability listing (*see* Filing No. 5-2 at 16) — is mandated by the disability framework. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (indicating category of "12.03 Schizophrenia spectrum and other psychotic disorders" is "satisfied by A *and* B, or A *and* C") (emphasis added).

**B.      Objections Concerning the ALJ's RFC Determination**

Next, Andrew B. argues that the record demonstrates his use of supports allowed him to work part-time. He maintains without citation to the record or evidence that the level of community and clinical support he receives "would change" as a result of the ALJ's decision, "because there are only twenty-four hours in a day." (Filing No. 19 at 3; *see also id.* at 2.)

In some respects, Andrew B.'s responses to the Report and Recommendation parallel an argument he previously raised: that the ALJ did not build a logical bridge to the conclusion that he was able to sustain competitive employment "while also needing life skills training and support three to four days a week in order to work a part-time job." (Filing No. 7 at 11.) The Magistrate Judge disagreed and found in part that Andrew B. "clouds the issue by relying heavily on his participation in the Clubhouse as evidence that he cannot hold down a job." (Filing No. 18 at 8.) The Magistrate Judge observed that "it is far from clear" that he cannot function with the support

8

received at the Clubhouse; participation and success in this environment "is not akin to a declaration that attendees can never function independent from the environment." *Id.* at 9.

The assertions in Andrew B.'s response appear to dispute the ALJ's RFC analysis without specifically addressing it (*e.g.*, Filing No. 19 at 2 (citing Filing No. 5-2 at 20); *compare id.* at 3 (discussing the need for an accommodation to sustain part-time work), *with* Filing No. 7 at 16–17 (discussing the consideration of certain opinion evidence appearing in ALJ's RFC assessment and pertaining to Andrew B.'s preferential client assignments), Filing No. 5-2 at 20, 22 (ALJ's RFC assessment).[2] As such, the Court turns there now.

The ALJ's RFC assessment indicates:

> Due to the claimant's mental health disorders and substance use and moderate "paragraph B" limitations, the undersigned finds that the claimant can understand, remember and carry out simple instructions and perform simple routine tasks, in a position with only occasional changes. The claimant can maintain concentration, persistence and pace for simple tasks in two-hour increments. The claimant can have occasional interaction with the public, coworkers and supervisors.

(Filing No. 5-2 at 19). In reaching this conclusion, the ALJ considered statements from Andrew B. and his mother, *see id.* at 18–19, as well as his case manager and life skills clinician, Ms. Summers, *see id.* at 19, before turning to evaluate the symptoms' intensity, persistence, and limiting effects. Finding the statements of his symptoms to be "not entirely consistent with the objective medical and other evidence," the ALJ discussed Andrew B.'s mental status examinations (medical

---

[2] Despite an expressed willingness to concede "his arguments regarding the RFC" (Filing No. 19 at 3), the Court nevertheless views Andrew B.'s contentions, asserted in a somewhat ambiguous response to the Report and Recommendation, as squarely directed at his residual functional capacity, or the "most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). For example, the Court interprets his position that the "use of [his] supports" only "allowed him to work part-time" (Filing No. 19 at 2), as akin to an undeveloped argument that the ALJ did not consider certain "mental limitations that affect[ed] what [he] can do in a work setting" or evidence of his "limited ability . . . in responding appropriately to . . . work pressures in a work setting . . . ." 20 C.F.R. § 404.1545(a)(1), (c). By Andrew B.'s logic, his supports presuppose a mental limitation or limitations — permitting work in a part-time, but not full-time, capacity — the nature and extent of which the ALJ must not have considered in determining Andrew B.'s residual functional capacity for work activity on a regular and continuing basis.

evidence) and activities and concluded that "his mental status examinations have produced good function, his mental health symptoms have stabilized and are less than in the past, and he is highly functional." *Id.* at 20. He also discussed at length various opinions, medical and otherwise, affording some weight to the assessment of Andrew B.'s psychiatrist and treating physician, Dr. Ratliff, as well as the state agency psychological consultants' statements, and little weight to the statements of Andrew B.'s mother and testimony and written narrative of Ms. Summers. *See id.* at 20–22.

To the extent Andrew B. previously argued to this Court generally that the ALJ failed to consider his own subjective allegations (*see* Filing No. 7 at 13), the Court notes that the ALJ is entitled to discount his complaints regarding the intensity, persistence, and limiting effects of his symptoms. *See Prill v. Kijakazi*, 23 F.4th 738, 748 (7th Cir. 2022). As the ALJ explained, the nature and scope of his activities showed him to be more functional than he alleged. The ALJ was permitted to make this determination. *See* 20 C.F.R. § 404.1529(c)(3), (4). The ALJ recounted Andrew B.'s testimony about his recreational, work, and daily activities, discussing in detail his employer's statements, before finding him capable of the unskilled work articulated in the assigned RFC (*see* Filing No. 5-2 at 20). Because that credibility determination was not patently wrong, this Court cannot disturb it. *See Prill*, 23 F.4th at 748 (citing *Burmester*, 920 F.3d at 510; *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)).

The ALJ likewise did not improperly discount the opinions of Andrew B's mother, in light of Dr. Ratliff's statements (*see* Filing No. 7 at 14). The ALJ assigned little weight to his mother's statements because she is a non-medical professional, and thus not an "acceptable medical source" (Filing No. 5-2 at 22; *see* 20 CFR § 404.1513(a)), and found her observations conflicted with —

10

*i.e.*, was inconsistent with — the objective evidence. *See Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019).

To the extent that Andrew B. argues now that the ALJ should have weighed more heavily the beliefs of "his entire treatment team", who he alleges favored maintaining the status quo when it came to the supports he received (Filing No. 19 at 2), or his interpretation of a solitary statement in a treatment note by Dr. Ratliff,[3] reaching such conclusions would require the Court to reweigh the evidence, contrary to well-settled case law on the standard of review for Social Security appeals. *See Reynolds v. Kijakazi*, 25 F.4th 470, 474 (7th Cir. 2022).

Without doing so now, the Court notes the following. The ALJ found Andrew B. "to be more limited than Dr. Ratliff would allow" given that he "report[ed] some ongoing symptoms despite treatment." (Filing No. 5-2 at 21.) He further gave limited weight to Dr. Ratliff's aforementioned statements about functioning at quite a high level and being stable despite thought disorders since, in the context of the RFC evaluation, they did "not offer insight into the claimant's specific work-related functional abilities." *Id.* He even noted that the findings of the agency psychological consultants "fail to fully consider the allegations that the claimant still experiences some symptoms that interfere, albeit to a limited extent, with his cognitive and social functioning and ability to tend to his daily activities." *Id.* These observations, as well as others, demonstrate the ALJ's nuanced and careful consideration of the opinion evidence before him.

---

[3] Andrew B. reasons in part that Dr. Ratliff's advice "to continue with the case management services he was receiving" indicated "Dr. Ratliff thought [Andrew B.] required the support he was receiving." (Filing No. 19 at 2 (citing Filing No. 5-14 at 857)). From the medical record to which he seems to point, a single notation within psychiatric treatment notes from June 28, 2021, states: "Case Management: Continue CM services; pt now working with Randy and Roger who visits with patient on regular basis which he finds helpful overall." (Filing No. 5-14 at 858.) The Court does not agree with Andrew B.'s assessment that this limited observation in Dr. Ratliff's shorthand clinical notes unequivocally demonstrates a medical opinion by his treating physician that he *required* the support he was receiving, even were it to unambiguously constitute a recommendation that Andrew B. continue case management services.

The burden remains on Andrew B. to establish harm by identifying specific limitations that were supported by the evidence yet neglected by the ALJ. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Given the above considerations, the Court cannot agree that he has shown how his medically determinable impairments caused any limitations beyond those the ALJ found. *See Dudley v. Berryhill*, 773 F. App'x 838, 843 (7th Cir. 2019) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004)) ("When no doctor's opinion indicates greater limitations than those found by the ALJ, there is no error."); *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is she offered no opinion from any doctor to set . . . any other limits, greater than those the ALJ set.").

The Court agrees with the Magistrate Judge that the ALJ's RFC assessment, undertaken with exceptional thoroughness, should be affirmed. The ALJ did not ignore Andrew B.'s allegations of hallucinations and paranoia, but considered them (*see* Filing No. 18 at 12–13 (discussing substantial evidence supporting ALJ's FRC analysis)). The ALJ was able to reasonably rely, as he did, on answers provided by the program director of the mentoring program Andrew B. worked at in determining that Ms. Summers' statements conflicted with the evidence on record (Filing No. 5-2 at 22; *see also id.* at 67 (counsel's agreement to the ALJ's question as to whether the program directors' answers were the "only thing [] in the file from the employer")). The preference for Ms. Summers' testimony does not demonstrate clear error, especially considering the record evidence that sufficiently supports both the ALJ's medical improvement and RFC determinations. The Court's separate review of the record evidence further assures it that, even if selecting one's own mentorship clients amounted to a formal accommodation, harmful error did not occur on the ALJ's part.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that there is no error in the Magistrate Judge's Report and Recommendation and therefore **OVERRULES** Andrew B.'s objections (Filing No. 19). The Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendation (Filing No. 18), **AFFIRMING** the decision of the Commissioner.

**SO ORDERED**.

Date:  3/18/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jonelle L. Redelman
REDELMAN LAW LLC
jonelle@redelmanlaw.com

Eric Harris Schepard
SSA-Ogc
eric.schepard@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov